# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN BAXA ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-5434** |
| **SETERUS, INC.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant Seterus, Inc.'s Motion for Summary Judgment (Doc. 48). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This dispute arose after the home of Plaintiffs John and Linda Baxa was sold at a tax sale because of a property tax delinquency. Plaintiffs allege that their mortgage required their mortgage servicer, Defendant Seterus, Inc. ("Seterus"), to pay the property taxes on Plaintiffs' home but that Defendant failed to do so, which resulted in the tax sale.

Plaintiffs filed their initial Complaint against Defendant on May 31, 2017 alleging state claims for breach of contract, negligence, and conversion and federal claims under the Fair Credit Reporting Act ("FCRA") and the Real Estate Settlement Procedures Act ("RESPA"). Plaintiffs filed a First Amended Complaint on June 7, 2017 and a Second Amended Complaint on December 4, 2017. The Second Amended Complaint sought to turn Plaintiffs' suit into a class action.

1

On January 4, 2018, Defendant filed a 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint. The Court granted Defendant's Motion in part on July 31, 2018. Plaintiffs' state law negligence and conversion claims were dismissed with prejudice on prescription grounds, Plaintiffs' fraud claim was dismissed without prejudice, and Plaintiffs' breach of contract claim survived. Plaintiffs' FCRA and RESPA claims also were dismissed without prejudice. In response to this ruling, Plaintiffs filed their Fourth Amended Class Action Complaint on August 21, 2018.[1] This Fourth Amended Complaint maintained Plaintiffs' breach of contract claim and re-urged RESPA and fraud claims.

On September 11, 2018, Defendant filed a 12(b)(6) Motion to Dismiss Plaintiffs' Fourth Amended Complaint. Because Defendant attached several relevant mortgage records to its Motion that had not been a part of any of Plaintiffs' complaints, the Court on January 24, 2019 converted Defendant's Motion to Dismiss to a Motion for Summary Judgment. The Court gave the parties additional time to respond to the conversion order, and the parties responded accordingly.

## **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will

---

[1] This was Plaintiffs' third amended complaint but fourth total complaint. Nevertheless, because Plaintiffs' filed the document as their "Fourth Amended Class Action Complaint," the Court will refer to it as their Fourth Amended Complaint.
[2] FED. R. CIV. P. 56.

2

properly preclude the entry of summary judgment."[3] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[8] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[9] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

---

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] *Id.* at 248.
[5] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[6] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[7] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[8] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[9] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[10] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

### I. Breach of contract claim

"To prevail on a breach of contract claim, a plaintiff must prove "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."[11] Thus, to ultimately prevail on their claim, Plaintiffs must prove that Seterus undertook an obligation to perform, that Seterus failed to perform that obligation, and that Seterus' failure to perform resulted in damages to the Plaintiffs.

Although Plaintiffs have shown that Seterus undertook an obligation to pay their property taxes, Plaintiffs cannot show that Seterus breached that obligation. The mortgage between the parties requires Seterus to "pay Escrow Items no later than the time specified under RESPA."[12] "Escrow items" included "taxes and assessments."[13] RESPA specifies that Seterus shall make escrow payments "in a timely manner as such payments become due."[14] Federal regulations further define "in a timely manner" as "on or before the deadline to avoid a penalty, as long as the borrower's payment is not more than 30 days overdue."[15] Thus, the mortgage agreement obligated Seterus to pay Plaintiffs' property taxes on or before deadlines to avoid a penalty such as a tax sale—but only if the Plaintiffs were not more than 30 days late on their mortgage payments.

---

[11] Star Fin. Servs., Inc. v. Cardtronics USA, Inc., 882 F.3d 176, 179 (5th Cir. 2018) (citing Favrot v. Favrot, 68 So. 3d 1099, 1108–09 (La. App. 4 Cir. 2011)).
[12] Doc. 23-3 at 4.
[13] *Id.* at 2, 4.
[14] 12 U.S.C. § 2605(g).
[15] 12 C.F.R. § 1024.17(k)(1).

Here, the record is clear that Plaintiffs were more than 30 days late on their mortgage payments at the end of 2015 when Seterus failed to pay Plaintiffs' property taxes. Plaintiffs' December 31, 2015 Account Statement included a "delinquency notice" informing Plaintiffs that at that time they were "delinquent on [their] mortgage loan by 152 days."[16] The Account Statement further specifies that Plaintiffs at that time owed more than $11,000 in past due payments.[17]

Plaintiffs nonetheless argue that they were timely on their mortgage payments as of December 31, 2015. In support, they cite to two documents—one appears to be a credit report, and the other is a Customer Account Activity Statement.[18] Plaintiffs argue that page 7 of the credit report "shows the mortgage account as current."[19] In fact, page 7 of the credit report notes under the "account history" subheading that Plaintiffs' mortgage payments were "150 days past due as of Jan 2016, Dec 2015."[20] Plaintiffs further argue that pages 9 through 12 of the Customer Account Activity Statement show that Plaintiffs made payments toward their mortgage loan that Seterus failed to properly credit toward Plaintiffs' account.[21] What the Customer Account Activity Statement actually shows is that Plaintiffs were behind on their mortgage payments for months leading up to December 2015, and that Seterus on

---

[16] Doc. 53-1 at 4.
[17] *Id.* at 2.
[18] The credit report is Record Document 64-1. The Customer Account Activity Statement is Record Document 64-2. The Court notes that neither document has been authenticated. Nevertheless, neither party has objected to the authenticity of these documents. A district court may consider evidence that is not objected to—even if it lacks authenticity—for the evidence's probative value. Permian Petroleum Co. v. Petroleos Mexicanos, 934 F.2d 635, 647 (5th Cir. 1991). As explained above, the probative value of these documents is strengthened because of how the documents conform with the authenticated Account Statement submitted by Defendant. *See* Doc. 53-1.
[19] Doc. 64 at 7.
[20] Doc. 64-1 at 7.
[21] Doc. 64 at 7.

5

multiple occasions credited Plaintiffs' account with advanced payments in order to keep the escrow account funded.[22] Plaintiffs have failed to produce any evidence suggesting that they were current on their mortgage payments as of December 31, 2015. Indeed, the record shows that Plaintiffs were more than 30 days behind on their mortgage loan payments in December 2015 and early 2016 when Seterus failed to pay Plaintiffs' property taxes. Under the terms of the mortgage, Seterus was not obligated to pay Plaintiffs' property taxes under those circumstances. Because there is no genuine dispute of material fact underlying this claim, Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.

## II. RESPA claims

Plaintiffs allege that Seterus violated RESPA in two ways. First, Plaintiffs allege that Seterus violated 12 U.S.C. § 2605(g) by failing to timely pay Plaintiffs' property taxes. Section § 2605(g) provides, in relevant part:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.[23]

As previously discussed, federal regulations provide that a servicer need not make tax payments that they would otherwise be required to make when borrowers are more than 30 days late on their mortgage payments. Accordingly, for the same reasons that Plaintiffs' breach of contract claim fails, so too does their claim under § 2605(g).

---

[22] *See* Doc. 64-2 at 9–12.
[23] 12 U.S.C. § 2605(g).

6

Second, Plaintiffs allege that Seterus violated 12 U.S.C. § 2605(e) by failing to timely respond to an account-related inquiry. Under the statute, a loan service provider must take certain actions after receiving a "qualified written request" ("QWR") from a borrower.[24] The statute defines the elements that an inquiry must contain to qualify as a QWR.[25] To prevail on a § 2605(e) claim, a plaintiff must show that: (1) the relevant correspondence sent to the loan provider meets the requirements of a QWR; (2) the loan servicer failed to make a timely response; and (3) the loan servicer's failure to timely respond caused actual damages.[26]

Even assuming that the relevant correspondence submitted by Plaintiffs is a QWR, Plaintiffs have not shown that Seterus failed to timely respond to the letter or that it caused Plaintiffs actual damages. Under 12 U.S.C. § 2605(e), a loan servicer must substantively respond to a QWR "[n]ot later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any [QWR]." The letter identified by Plaintiffs as the QWR is dated May 2, 2017.[27] The letter, which identifies Plaintiffs' Seterus loan number and was written and signed by Plaintiffs' attorney, reads in its entirety:

> Dear Sir or Madam:
>
> This firm has the pleasure of representing John and Linda Baxa with respect to the above referenced loan.

---

[24] *See id.* § 2605(e).
[25] *See id.* § 2605(e)(1)(B); Williams v. Wells Fargo Bank, N.A., 560 F. App'x 233, 241 (5th Cir. 2014) ("To constitute a QWR, the correspondence from the borrower must enable the servicer to identify the name and account of the borrower, include a statement of the reasons for the borrower's belief that the account is in error, or provide sufficient detail to the servicer regarding other information sought by the borrower.").
[26] Matter of Parker, 655 F. App'x 993, 997 (5th Cir. 2016) (citing *Williams*, 560 F. App'x at 241).
[27] Doc. 51-1.

7

> My clients are recently in receipt of their annual escrow review, and they believe it is inaccurate. Please provide a detailed escrow analysis and review of escrow payments.
>
> Please contact me if you have any questions.[28]

The record shows that Seterus responded to the letter on June 5, 2017.[29] The response included "a full transaction history of activity in Plaintiffs' escrow account."[30] Thus, Seterus substantively responded to Plaintiffs' inquiry within the time provided for by RESPA. Plaintiffs therefore cannot show either that Seterus failed to timely respond to their inquiry or that the allegedly late response caused Plaintiffs any damages. Because there is no genuine dispute of material fact underlying key elements of Plaintiffs' RESPA claims, Seterus is entitled to summary judgment on those claims.

## III. Fraud claims

Plaintiffs' Louisiana fraud claim stems from the following two paragraphs of allegations in their Fourth Amended Complaint:

> On or about March 10, 2017, Plaintiffs received a letter from the St. Charles Parish Sheriff's Office that their property taxes were not paid by the Defendant. On or about March 10, 2016, Plaintiff immediately called Seterus to inquire on whether or not their property taxes were paid. They were informed by the Seterus customer service representative on duty at that time that their property taxes were paid. Plaintiffs took no further action, relying upon the representations and statements of the Seterus customer service representative, who was on duty at that time, on or about March 10, 2016.
>
> As a result of the fraudulent and false and material misrepresentations of the Seterus customer service representative on duty at the time of the call, on or about March 10, 2017 and the Plaintiffs reasonable reliance thereon, the Plaintiffs suffered emotional distress, embarrassment and actual damages in the

---

[28] *Id.*
[29] Doc. 51-2.
[30] Doc. 67 at 2. *See* Doc. 51-1.

8

form of higher mortgage payments, attorney's fees and costs of court. Seterus has the specific name of the individual who was on duty at the time of the phone call.[31]

Defendant argues that Plaintiffs' fraud claim is prescribed for the same reasons that the Court previously found Plaintiffs' negligence and conversion claims were prescribed.[32]

Fraud is a delictual action under Louisiana law that is "subject to a liberative prescription of one year."[33] "Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."[34] "[I]n cases in which a plaintiff suffers some but not all of his damages, prescription runs from the date on which he first suffers actual and appreciable damage, even though he may thereafter come to a more precise realization of the damages he has incurred or incur further damage as a result of the completed tortious act."[35]

For the same reasons explained in this Court's July 31, 2018 Order and Reasons, Plaintiffs' had constructive notice of their fraud claim for prescription purposes no later than May 26, 2016—the second time that the Sheriff's Office published a notice in the local newspaper that Plaintiffs' home was subject to

---

[31] Doc. 45 at 11–12. The Court recognizes that these allegations do not clarify whether the allegedly fraudulent statement was made in 2016 or 2017. Plaintiffs failed to address this inconsistency—even though Defendant raised it in its Motion to Dismiss—in either their Opposition or their response to this Court's conversion order. The record indicates that the references to 2017 in these allegations are typos and that Plaintiffs meant to allege that the statement was made in 2016. Nevertheless, for the reasons explained below, the date of the statement is irrelevant for prescription purposes because Plaintiffs were on notice of their claim more than a year before they filed suit.
[32] *See* Doc. 39 at 7–8.
[33] LA. CIV. CODE art. 3492; *see* Albe v. City of New Orleans, 150 So. 3d 361, 367 (La. App. 4 Cir. 2014) (noting that fraud is "unquestionably . . . delictual . . . and thus subject to [a] one-year prescriptive period").
[34] Campo v. Correa, 828 So. 2d 502, 510 (La. 2002).
[35] Hogg v. Chevron USA, Inc., 45 So. 3d 991, 1001 (La. 2010).

a tax sale.³⁶ Because Plaintiffs did not file their initial Complaint until May 31, 2017, their fraud claim is prescribed.³⁷

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiffs' claims are **DISMISSED** with prejudice.

New Orleans, Louisiana this 25th day of March, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

³⁶ *See* Doc. 39 at 7–8.
³⁷ Even if Plaintiffs' fraud claim was not prescribed, Plaintiffs have not submitted any evidence to support this claim. Thus, there is no genuine dispute of material fact underlying this claim, and Defendant would still be entitled to summary judgment.